## Commonwealth *v.* Del Vaccio, Appellant.

548

Argued February 5, 1930. Before MOSCHZISKER, C. J., WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Francis Thomas Anderson,* with him *William A. Gray,* for appellant.—The learned trial judge erred in instructing the jury as to the elements of the crime of murder: Com. v. Drum, 58 Pa. 9; Com. v. Mayberry, 290 Pa. 195; Kilpatrick v. Com., 31 Pa. 198, 203; Com. v. Divomte, 262 Pa. 504; Brown v. Com., 76 Pa. 319; Com. v. Morrison, 193 Pa. 613, 615-24; Johnson v. Com., 115 Pa. 369, 376; Com. v. Marshall, 287 Pa. 512; Com. v. Klose, 4 Kulp; Com. v. Neills, 2 Brewster 553; Com. v. Hart, 2 Brewster 546; Com. v. Brown, 7 Pa. C. C. R. 640; Com. v. Halon, 8 Phila. 401; Com. v. Gentry, 5 Pa. Dist. Ct. 703; Murray v. Com., 79 Pa. 311.

The trial judge erred in refusing to withdraw a juror on account of improper remarks made by the counsel for the Commonwealth in his summation before the jury: Com. v. Shoemaker, 240 Pa. 255; Com. v. Ronello, 251 Pa. 329; Com. v. Swartz, 37 Pa. Superior Ct. 507;

Com. v. Nicely, 130 Pa. 261; Com. v. Polichinus, 229 Pa. 311.

*Vincent A. Carroll,* Assistant District Attorney, with him *John Monaghan,* District Attorney, for appellee.— The court below did not err in instructing the jury: Com. v. Harman, 4 Pa. 269; Com. v. McLaughlin, 293 Pa. 218.

The selection of detached sentences unrelated to the other parts of the charge is not proper: Menhennet v. Davis, 71 Pa. Superior Ct. 260, 264; Com. v. Link, 72 Pa. Superior Ct. 122; McDyer v. Rys., 227 Pa. 641; Com. v. Warner, 13 Pa. Superior Ct. 461; Com. v. D'Angelo, 29 Pa. Superior Ct. 378; Com. v. Ware, 137 Pa. 465; Com. v. Lapriesta, 257 Pa. 286; Com. v. Russogulo, 263 Pa. 93; Com. v. Burd, 263 Pa. 143.

The remarks of the district attorney were justified: Com. v. Cicere, 282 Pa. 492; Com. v. Karamarkovic, 218 Pa. 405; Com. v. Smith, 270 Pa. 583; Com. v. Exler, 61 Pa. Superior Ct. 423; Com. v. Shoemaker, 240 Pa. 255.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 17, 1930:

Frank Del Vaccio, appellant, together with two others, Anthony Piccarilli and Danny Del Giorno, was indicted for the murder of Samuel Jacobs. The defendant was tried alone, on a plea of not guilty, and the jury returned a verdict of murder in the first degree, assessing the death penalty as punishment; he was sentenced accordingly.

The killing occurred July 13, 1929, between five and six o'clock (D. S. T.) in the afternoon, on South Tenth Street between Federal and Ellsworth Streets, Philadelphia. At eleven o'clock on the morning of that day, Del Vaccio, accompanied by Piccarilli and Del Giorno, drove up in an automobile belonging to the latter's father, stopped on Tenth Street opposite No. 1171, where the father of Samuel Jacobs kept a store, and all,

three engaged in conversation with the deceased. About two o'clock in the afternoon, these three men reappeared at the scene, and Del Giorno and defendant held a second conversation with the deceased, which lasted more than an hour. Later that day, at approximately five o'clock, Jacobs went to a drug store located on the northwest corner of Tenth and Federal Streets, where, in a booth built in the store window, plainly visible to persons on the sidewalk in front of the Jacobs store, across the street, he answered a telephone call. While he was in the booth talking, the same car, containing defendant and his two companions, came from a point east of Tenth Street on Federal, turned slowly north, against traffic, on the east side of Tenth Street, and stopped a little to the north of the Jacobs store, with the rear of the car just opposite the shop door. The three occupants remained in the automobile. At this time, Samuel Jacobs' mother and father were in the store or the house, which occupied the space over and behind the store, in the same building; his wife and several of his small children, his 16-year-old sister, and others, were at various near-by points on the street in front of the Jacobs store. With attending conditions as just described, deceased left the drug store, crossed Tenth Street, walking north, and when he reached a point almost directly in front of the Jacobs store, the sidewalk between himself and the parked car became the scene of gun fire and a fusillade of bullets, endangering the lives of all in the vicinity, including, of course, Jacob's wife, children and sister. Bullets went into the store, injuring one Seddic, a customer. Samuel Jacobs received two mortal wounds, from which he died early the next morning. Piccarilli, a witness for defendant, claimed to have been slightly wounded while in the automobile; but, on cross-examination, he admitted having told a different story on previous occasions, to the effect that he was walking on 10th Street at the time he received the alleged wound. The Commonwealth offered

proof that deceased was not armed; further, that all the shooting came from defendant and his companion Del Giorno, and was without provocation.

All of the accused fled from the scene on foot, and Del Giorno is still at large. Sixteen days after the shooting, defendant surrendered himself to the police. He admitted having shot Jacobs, but claimed it was done in self-defense. Appellant's witnesses, in an effort to establish this defense, testified that deceased first fired on Del Vaccio and his companions, who were forced to return the fire in order to defend themselves. Defendant, admitting he had been "on the outs" with Samuel Jacobs and had not spoken to him for two years, said that he, Del Vaccio, and his two companions were attempting to recover an automobile (belonging to one Di Pasquale, who, prior to this time, was unknown "personally" to defendant), which, they thought, might have been stolen by a friend of the deceased; that, at one of the meetings prior to the shooting, Jacobs had told them to come back within an hour's time and he would try to let them know something about the car; that, returning at the appointed hour, they found one Polio (an alleged confrere of the deceased) on the scene, with a revolver concealed in his cap, which defendant "spied" when Polio removed the cap and held it in his left hand; that appellant wrested the cap, containing the revolver, from Polio, who ran away; that, at this time, the deceased appeared, without coat or vest, drew two pistols, which he had concealed beneath his shirt, and opened fire on defendant and his companions; and that, only after Jacobs had begun shooting, did appellant use the revolver which he had taken from Polio.

Appellant states four questions involved. The first of them is, "Did the [trial] court err in ruling on objections to the admission of testimony?" This proposition covers two assignments of error, neither of which presents reversible error. When Mrs. Jacobs, the mother of deceased, was called as a witness for the Com-

monwealth, she was asked, on cross-examination by counsel for defendant, if she had not told the police, when they came to see her after the homicide, that she "didn't know who did the shooting," to which she replied, "I told them that way, sure, and you know why I told them that." The prosecuting officer then interjected the question, "Why?" and the witness was allowed to say that she had told the police she did not know who did the killing because she feared the same people who were responsible for the death of her son would get her. Mrs. Jacobs, on her examination-in-chief, had testified that her son was shot by defendant, and the evident purpose of the cross-examiner was to impugn her veracity. Under these circumstances, the trial judge was warranted in permitting her to explain why she had told the police that she did not know who had done the shooting, and the fact that, in making such explanation, she may have harmlessly impinged upon the hearsay rule, would not cause reversible error. As to the second of the two above mentioned assignments, a man called by defendant testified that he saw Jacobs start the shooting. In rebuttal, to attack the credibility of this witness, the Commonwealth called a woman, who testified to declarations which the man in question had made to her, to the effect that he was being forced by threats against his life, from those interested in the defense, to testify as he did. We see no error in the admission of this testimony.

The next question involved, stated by appellant, is: "Did the court below err in refusing to withdraw a juror on account of remarks made by counsel for the Commonwealth in his summation before the jury?" In support of this question, defendant points to three assignments of error, each one containing excerpts from the remarks of the assistant district attorney who prosecuted the case; but only one of these assignments shows a request to withdraw a juror, or an exception entered by defendant. Moreover, while the speeches made by counsel on

both sides were transcribed by the official stenographer, yet the only motion made by counsel for defendant was that the stenographic notes of "the evidence, with the objections thereto and rulings thereon, and of the charge of the court, with the exceptions thereto and points submitted by counsel, and rulings thereon and exceptions thereto," be transcribed and filed; and the stenographer certifies, not that the addresses of counsel, but that the "evidence and charge," are contained "fully and accurately" in his transcript. Finally, the trial judge's certificate can be taken to cover only that part of the record referred to by the official stenographer. Under these circumstances, the sole remark of the prosecuting officer which we will review is that covered by the assignment of error containing appellant's motion to withdraw a juror and his exception to the refusal of that motion. Had counsel desired other alleged objectionable matter contained in the speeches of the assistant district attorney placed on the record for purposes of review, he should have followed the course outlined by this court in Com. v. Shoemaker, 240 Pa. 255, 259, where we indicated that, when things said at trial are objected to, the attorney making the objection should request the trial judge to direct the official stenographer to place the remarks of record, "as the court had heard and understood them." If, as here, all of the speeches of counsel appear in the notes of testimony, they must be accompanied by a special order from the trial court to make them part of the record for purposes of review; and, even then, an appellate tribunal is not required to pass on the parts objected to which are not properly covered by an exception. Here, the one properly supported assignment shows that the prosecuting officer said: "Members of the jury, if that defense gets across in this case, a typical gunman's defense, then, members of the jury, we might as well stop"; whereupon, counsel for defendant asked for the withdrawal of a juror, "because of the remarks of the district attorney that this defense is a typical gun-

man's defense." We think that, under the testimony presented by the Commonwealth, the prosecuting officer was within his rights in so characterizing the defense; and, though other remarks of the assistant district attorney, which we shall not review, because not properly on the record, are specimens of advocacy not to be commended, and which the trial judge might well have stopped, yet they are not of a character to warrant a reversal in a case like the present, where the verdict is sustained by unobjectionable evidence, properly presented to the jury.

The two remaining statements of questions involved are, "Did the court below err in instructing the jury?" and, further, "Did [it] err in refusing to affirm defendant's points for charge?" After reading all the assignments in support of these points, and considering the argument of counsel, we see no reversible error. When the numerous excerpts from the charge of the court, here complained of, are read in connection with their respective contexts, in each instance the criticism to which counsel for appellant subjects them, is seen to be without proper foundation. It may, however, be well to examine, in particular, two of its criticisms. Towards the end of the charge, after telling the jury, if they believed the prisoner shot in self-defense, they should "turn him loose," the trial judge said that the jurors must "consider the evidence," and "bring in a verdict commensurate with the crime that has been described to you." Appellant made no special complaint of these instructions at the time they were given, and took only a general exception to the charge; but now, he criticises the use of the words "turn him loose." It is evident from the charge as a whole that, by this expression, the trial judge meant "acquit him," and the jury must have so understood. Appellant also objects to the use of the word "crime," as indicating the judge's view that a crime had in fact been committed, and, to this extent, as removing from the jury that important issue;

but, following the expression complained of, the court affirmed points submitted by defendant, which instructed the jurors that the offense charged against him had to be proved by the Commonwealth, beyond a reasonable doubt, and clearly impressed on them the fact that, if, in their view, the Commonwealth had not produced sufficient evidence, of the quality required by law, to convict, they must acquit. In this connection it is to be observed also that the trial judge, throughout his charge, repeatedly told the jury, in one form or another, it was for them to determine whether defendant was guilty of any crime. Considering the two matters in hand with the instructions as a whole, we are not impressed that, on the basis of reasonable probability (which is the proper standard to adopt), either of the instructions now under special consideration contains matter harmful to defendant. As to the manner in which the trial judge disposed of appellant's several requests for instructions to the jury, all of them, not specifically answered, were covered in the body of the charge, except perhaps one, where the judge was asked to say that, if the jurors were convinced, beyond a reasonable doubt, of defendant's guilt of murder of the first degree, but at the same time entertained such a doubt as to whether he should be given the death penalty or life imprisonment, it was their duty to assess the latter punishment. While this request, or point for charge, is marked on the record as "covered," it nowhere appears in the body of the charge; but the doctrine of reasonable doubt is not to be applied as set forth in the point, and therefore the court below was quite right in not reading it to the jury: Com. v. Curry, 287 Pa. 553, 557, 558. No harmful mistakes were made in connection with defendant's requests, and the charge itself was most comprehensive, entirely impartial, unimpassioned, and without reversible error.

Appellant makes much of the fact that, after the homicide, the back of the automobile used by him and his

companions showed bullet holes; but there is no reliable information as to how or when these holes were made. The fact of their existence, and also other matters of fact, or alleged fact, argued in the briefs of appellant (which it would unduly extend this opinion to discuss in detail), are all reasonably explainable in ways entirely consistent with the verdict of the jury.

During the course of the trial, it developed that defendant had been previously convicted, and had served time, for shooting another man; also that he had then, as here, pleaded self-defense. It likewise developed that several of his principal witnesses had criminal records; but all this evidence came in without objection from defendant, and, further, the verdict cannot properly be attributed to any such collateral matter, since there was abundance of direct evidence, presented by the Commonwealth, to convict the accused.

There is a sharp conflict in the proofs, as presented by the two sides of this case, but we are not impressed that the jury erred in refusing to believe the prisoner and his witnesses, whose testimony, even as between themselves, was not always consistent; nor do we think that the prisoner's version of the shooting ought to have been accepted by the jury. In addition, certain of defendant's witnesses said that he opened fire on Jacobs after the latter had dropped the two guns which they alleged he used; that deceased had not been wounded "up to that time"; further, that the firing on Jacobs continued after he had "tripped," as one of these witnesses said, and fallen, disarmed, to the ground. This state of facts was not subscribed to by defendant himself, but, if believed by the jury, it would go far to rebut his plea of self-defense.

Finally, to answer the testimony of defendant's witnesses that deceased walked onto the scene with two loaded pistols concealed in his shirt, the Commonwealth offered detailed proof that, at the time of the shooting, the shirt Jacobs wore was of the light summer type, of

white material, with sleeves cut off at the elbows,—a highly unlikely hiding place for a brace of pistols. After minute study of the record as printed, and consideration of the arguments of counsel, we conclude that the Commonwealth's evidence, as a whole, warrants the verdict, and the punishment fixed by the jury fits the crime.

All the assignments of error are overruled, the judgment is affirmed, and the record is remitted to the court below for the purpose of execution.