## Commonwealth *v.* Flori, Appellant.

Argued March 17, 1930.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Wm. A. Gray,* for appellant.—The learned trial judge erred in refusing to withdraw a juror on account of improper remarks made by the prosecuting attorney in his argument before the jury: Com. v. Nicely, 130 P... 261; Com. v. Ronello, 251 Pa. 329; Com. v. Swartz, 37 Pa. Superior Ct. 507; Com. v. Shoemaker, 240 Pa. 255, 259, 260; Com. v. Polichinus, 229 Pa. 311; Com. v. Touri, 295 Pa. 57, 58; Com. v. Meyers, 290 Pa. 573, 580; Com. v. Baker, 93 Pa. Superior Ct. 360.

The ante-mortem statement of the deceased was erroneously admitted in evidence as a dying declaration.

The court below should have permitted defendant to cross-examine the witness, Leonard Nicoletti: Shaffner v. Com., 72 Pa. 60.

*Vincent A. Carroll,* Assistant District Attorney, with him *John Monaghan,* District Attorney, for appellee, cited, as to withdrawal of juror: Com. v. Rothensies, 256 Pa. 337; Com. v. Exler, 61 Pa. Superior Ct. 423; Com. v. Pennington, 249 Pa. 536; Com. v. Smith, 270 Pa. 583; Com. v. Cicere, 282 Pa. 492; Com. v. Valverdi, 32 Pa. Superior Ct. 241; Com. v. Striepeke, 32 Pa. Superior Ct. 82.

On dying declarations: Com. v. Puntario, 271 Pa. 501.

On cross-examination of witness: Reichart v. Beidleman, 17 S. & R. 41.

OPINION BY MR. JUSTICE SCHAFFER, April 14, 1930:

Appellant, James Flori, stands convicted of first degree murder, and under sentence of death, for the killing of Pasquale Livoy. The circumstances showing the relations between the two men and of the homicide, so far as necessary to be related here, are these: Flori was engaged in the illicit sale of alcohol and had, so he says in his testimony, sold 200 gallons to the deceased for

$600. The latter did not pay for it when delivered, and appellant, at the expiration of two or three days, went to the bottling establishment of Livoy and requested him to make payment, to which demand the latter stated that after the alcohol had been delivered to him it had been stolen, and charged appellant with the theft, suggesting in that connection that he, Livoy, would investigate the matter, and appellant should call two or three days later, which he did on September 10, 1928, accompanied by Amelio Scarano. They both entered the store connected with the bottling place and while in there evidently "held up" and robbed Livoy. He did not submit to the robbery, but with a sawed-off shotgun killed Scarano and wounded appellant, who fled from the scene. Police officers, who entered the store within a very few moments after the shooting, found Scarano's dead body on the floor with a pistol clutched in his hand, and alongside him a diamond ring, a watch and $48 in cash, identified as belonging to Livoy. Appellant was indicted for the felony perpetrated on Livoy and his trial was fixed for April 23, 1929. Livoy was present in court on that day but appellant did not appear, giving as his excuse that he was sick. The case was postponed until a few days later.

On April 24, 1929, the day following that on which appellant was to have been tried for the felony on Livoy, the latter was standing at the corner of Broad and Federal Streets about four o'clock in the afternoon, talking with Leonard Nicoletti. Just why Livoy was there is not altogether clear from the record. It is the contention of the Commonwealth that he had been lured there by someone acting in concert with appellant. Flori appeared upon the scene in an automobile accompanied by two other men, Frank Piccolo and Patsy Vignola. They got out of the car and immediately thereafter shooting began and Livoy fell to the pavement pierced by four or more bullets and died in the hospital a few hours later. A witness, called by defendant, who said that he went to

Livoy after he fell, testified that he, Livoy had a pistol in his hand. A police officer, who examined it shortly thereafter, gave it as his opinion, that the pistol had not been discharged by Livoy, as its barrel did not disclose any odor of powder when he smelled it to ascertain that fact. Flori fled from the scene of the crime to a house toward the western limits of Philadelphia (he seems to have maintained two residences) and thence to a dwelling back from the public road in Delaware County about sixteen miles from Philadelphia, where he was discovered by detectives on July 31, 1929, and taken into custody. To the officers who arrested him appellant admitted he shot the deceased. Asked why he had killed him, he replied, "Because he was a damned rat."

Appellant's able advocate, who presented his case at our bar but who did not try it in the court below, argues that there were errors committed during its course which would warrant a new venire. First he says the judge should have withdrawn a juror and continued the case because of improper statements made to the jury by the assistant district attorney who appeared for the Commonwealth. These alleged breaches of propriety as they appear in the assignments of error show that the prosecutor in his opening statement said, "The name of Jimmie Flori is a name to conjure with in South Philadelphia." We are at a loss to see what there was in this statement to prejudice the defendant or to warrant the withdrawal of a juror. In summing up, the assistant district attorney further commented thus: "I say to you again that Jimmy Flori, that suave man, Jimmy Flori, who reflects no hate here, he is as cold when he is free as he is when captured. Jimmy Flori, he put on the spot with the aid of his friend, the dead man, ending the life that God gave him. He went to Patsy Livoy as he did once before. As he did once before he went there and, when this man was on the spot, let him have it. Jimmy Flori, who was to appear for that other crime, the very next day, and a few days later in this court

room. He prepared his defense, members of the jury, as he did before, in case he got tried, to defeat the law, this sick man went out and rented a place on 57th Street, like the lair of an animal, and there he did business for awhile. He did business with Willie Lanzetti, another name to conjure with; Lanzetti, a name of terror in Philadelphia." We cannot reach the conclusion that these statements brought about the conviction of the defendant or in any way prejudiced him. If by doing business it was meant to convey that the defendant was engaged in the illegal sale of alcohol, he admitted that he was. Just who William Lanzetti was, or what the reference to him conveyed to the jury, we do not know and cannot surmise. No explanation of this reference is afforded by the record or the briefs. Counsel for appellant argues to us that in order to understand the full import of the expressions used it is necessary to consider numerous other objectionable statements made by opposing counsel in his argument. But they were not objected to nor brought on the record. True, what purports to be and doubtless is the rest of his address stenographically taken appears in the record, but no objection was made to any part of it and no motion of any kind proffered. This is the same situation that we had to deal with in the very recent case of Com. v. Del Vaccio, 299 Pa. 547, and we there said that while the speeches made by counsel on both sides were transcribed by the official stenographer, yet the only motion made by counsel for defendant was the customary one that the stenographic notes of the evidence and charge be transcribed (even that motion does not seem to have been made in this case) ; and we held that the sole remark of the prosecuting officer which would be reviewed, was that covered by the assignment of error containing the appellant's motion to withdraw a juror and his exception to the refusal of that motion. That ruling we repeat. We there pointed out, if "counsel desired other objectionable matter contained in the speeches of the assistant district

attorney placed on the record for the purposes of re-
view," the method to be employed was as indicated. We
have, however, read the speech of the prosecutor as it
appears on the record before us. As we said in the Del
Vaccio Case, it contains "specimens of advocacy not to
be commended,"—indeed they are much below the tone
which proper professional decorum dictates,—but we
are satisfied they played no real part in bringing about
the verdict rendered. It was produced by the testi-
mony of what occurred between Livoy and appellant
when he and Scarano staged the robbery of Livoy, by the
evidence of the impending trial of appellant for that
felony, by what was shown to have taken place when
appellant shot Livoy down, by his flight and by subse-
quent statements to the police officers that he had killed
him because he was a damned rat. Vendetta must not
be practiced in this Commonwealth.

The second reason advanced by appellant to work a
reversal of his conviction is that the trial judge erro-
neously admitted against him the dying declaration of
Livoy. It is argued that the physician, who was in at-
tendance on Livoy, did not tell him that he was going to
die and that part of the declaration was prepared be-
fore anything was said by the doctor. The doctor testi-
fied that he said to Livoy that he considered him in a
very serious condition and that the chance of his dying
was very great; after this statement he left the room.
A police officer, who was present and who heard what
the doctor said, testified that shortly thereafter Livoy
said to him, "If you have anything to ask me or if you
have anything you want me to sign, make it quick, be-
cause I am sinking." Another policeman testified that
Livoy said, "If you want me to sign anything do it quick,
because I am sinking and I feel like I am going to die."
After which his statements were reduced to writing and
signed by him. This met the requirements for admitting
the dying declaration in evidence: Com. v. Puntario,
271 Pa. 501; Com. v. Guida, 298 Pa. 370.

The third complaint is that the trial judge did not permit appellant's attorney to cross-examine Leonard Nicoletti, the witness who was talking with Livoy at Broad and Federal Streets at the time of the shooting, as to the details of the conversation between them. The Commonwealth's attorney in direct examination did not ask about what was said in the conversation; he simply brought out that the two men were talking together. While he objected to bringing out the conversation on cross-examination, he stated that he would not object to it if brought out in the defendant's case. As no part of the conversation was stated in direct examination, the ruling of the court was proper: Wigmore on Evidence (2d ed.), volume 4, section 1885 et seq. The cross-examination of a witness should be confined to matters in regard to which he has been interrogated in chief: Snyder v. Reading Co., 284 Pa. 59; Gallagher v. P. R. T. Co., 248 Pa. 304. This matter, however, completely drops out of the case, as appellant later called Nicoletti as his own witness and interrogated him about the conversation.

There is no merit in appellant's fourth and fifth propositions; they relate to the admission in evidence and production before the jury of a revolver found near the scene of the shooting, and firearms found in the house where defendant was arrested. Both of these matters were inconsequential.

As to the sixth complaint against the admission in evidence of the indictments against appellant upon which he was to have been tried the day before the shooting, it is sufficient to say that they were not offered, as appellant argues, as proof of separate offenses, but for the purpose of showing the motive and reason for the killing, that appellant was about to be put on trial on these indictments for the felonious entry upon and robbery of Livoy. For such purpose they were clearly admissible.

Under the seventh heading, appellant's counsel complains of the admission of the evidence of the police

officers as to what they saw when they entered Livoy's store and observed Scarano's dead body with the various articles belonging to Livoy lying on the floor alongside it. The endeavor is made to argue that these articles could have been placed where they were seen in order to give the similitude of a robbery when none had taken place. We are not impressed with this contention. The officers arrived on the scene but a few moments after the shooting. The possibility of another hypothesis would not render the evidence inadmissible, but would be merely a circumstance for the jury to take into consideration in determining its weight.

The eighth, ninth, tenth and eleventh subdivisions of appellant's brief complain of the instructions of the trial judge to the jury. It is said that the court instructed them that defendant admitted he had killed the deceased and it is asserted that the testimony discloses no such admission. Plaintiff's counsel overlooks the testimony of what occurred between appellant and the police officers when they arrested him, at which time, in answer to their query as to why he had killed Livoy, he said, "When he reached for his gun I gave it to him," assigning as the reason for doing so, "Because he was a damned rat." Furthermore appellant's defense was self-defense and he thereby admitted the killing, and attempted to justify it.

The further criticisms of the charge need not be discussed. They are at most slight inaccuracies of statement which could have done the defendant no harm, one of which the trial judge corrected when his attention was called to it, as he would have the others, had he been given notice of them. Not having been brought to his attention, they cannot now be complained of: Com. v. Thomas, 275 Pa. 137.

Our careful reading of the entire record discloses no reversible error. The judgment is affirmed and the record remitted to the court below for the purpose of execution.