## Commonwealth of Pennsylvania *v.* Wilcox, Appellant.

Argued October 2, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER and JAMES, JJ.

242

*William C. Alexander,* and with him *John E. Mc-Donough,* for appellant.

*William R. Toal,* Assistant District Attorney, and with him *William J. MacCarter, Jr.,* District Attorney, for appellee.

OPINION BY KELLER, J., February 1, 1934:

Defendant appeals from the sentence following his conviction on a charge of having as an officer—(President)—of the Suburban Title & Trust Co. on or about July 25, 1930, fraudulently converted to his own use, or the use of another person, twelve thousand dollars of the moneys of said corporation, contrary to the Act of March 31, 1860, P. L. 382, sec. 116, as amended by Act of June 12, 1878, P. L. 196, sec. 1. The record shows a continuation in Delaware County of the same practices which we have previously criticized, viz., (1) the unjustifiable multiplication of indictments (See Com. v. Avrach, 110 Pa. Superior Ct. 438, 168 A. 531), and (2) the filing and docketing of more than one indictment to the same number in the term, which we orally condemned at the argument of Com. v. Falls & Sykes, 102 Pa. Superior Ct. 392, 156 A. 894. Every indictment should have *its own separate number* in the term or sessions. If these criticisms had been heeded we would not have been confronted in this case by seventy odd indictments, all numbered 252, and distinguished only by additional letters and figures, such as 252A1, similar to a telephone directory call or the confusion of a Pennsylvania motor license tag; nor a record of this size.

A complaint, consisting of eight closely typewritten pages, was filed by one Gerald H. Effing on February

27, 1932 against this appellant and three other officers or directors of the Trust Company, John M. Hardcastle, Jr., Nicholas A. Dalton and George W. Statzell, Jr., all of whom gave bail to appear at the next term of the court of quarter sessions. Seventy-four bills of indictment, many of them containing a number of separate counts, were then prepared,—very many of them, including the one here involved, being *District Attorney's bills,* duly authorized by the court —, charging fraudulent conversion and embezzlement by corporate officer, embezzlement, false entry, fraudulent conversion, making of a false statement in writing, false pretense and conspiracy to cheat and defraud respectively.

On March 1, 1932, before the indictments had been presented to the grand jury or a true bill had been returned on any of them, *Dalton and Statzell* filed a petition asking for a bill of particulars. On this unusual—(and to the writer of this opinion, unheard of)—proceeding,—for a bill of particulars is properly ordered only because of the vagueness of an *indictment,* (Goersen v. Com., 99 Pa. 388, 398; Com. v. Buccieri, 153 Pa. 535, 547, 26 A. 228; Williams v. Com., 91 Pa. 493, 503; Com. v. New Bethlehem Boro, 15 Pa. Superior Ct. 158; Com. ex rel. v. Johnston, 19 Pa. Superior Ct. 241; Com. v. Gennerette and McCoy, 10 Pa. Superior Ct. 598; Sadler's Criminal Procedure, sec. 320, p. 326),—a rule to show cause was granted on March 4, 1932, which was made absolute on March 11, 1932, and on March 22, 1932, one bill of particulars elaborating in even more detail the already lengthy sworn complaint above referred to was filed by the district attorney. Neither this appellant nor Hardcastle asked for any bill of particulars, and none of the defendants asked for a bill of particulars as to any indictment; nor was any filed. The indictment in this appeal was, in itself, sufficiently specific. It is

not required to furnish a specification of the evidence to be adduced by the Commonwealth: Com. v. Buccieri, supra, p. 547.

In the meanwhile, bills of indictment were presented to the grand jury which convened for the March session of court on March 7, 1932 and on March 10, 1932 true bills were returned. We are not advised whether any motions to quash the indictments were filed, for the appellant has not printed the docket entries as required by rule of court No. 54. The cases were tried together on June 20, 1932, before Hon. S. LEMMON REED, President Judge of the Orphans' Court of Cambria County, specially presiding. The trial lasted until July 8, 1932, on which date a verdict was rendered finding all of the defendants guilty on some indictment or indictments,—this appellant being found guilty on nineteen and acquitted or discharged on twenty-four. Motions for a new trial were made which were argued on September 27, 1932. On December 30, 1932 the rules for a new trial were discharged and defendants ordered to appear for sentence on February 3, 1933.

On that day this appellant was sentenced on the seventh count of indictment No. 252A1, charging embezzlement by a corporate officer. No sentence was imposed on the remaining indictments on which he had been found guilty. He appealed the same day to this court.

Under our rules, (Rule 7), the case was assigned for argument to the week of March 13, 1933 at Harrisburg. On February 20, 1933 the appellant applied for a continuance to the first Monday in October, setting forth his inability to get the record ready and printed by the week of March 13, and on March 3 this court made an order continuing the argument to the week of May 1, at Pittsburgh. On April 10, appellant again filed his petition asking that the argument be

postponed for the same reason until the first Monday of October. On April 13 this court postponed the argument to July 12, a term specially set for the hearing of criminal appeals. On June 2, four months after he was sentenced, the appellant filed in the court of quarter sessions a statement of the questions which he proposed to argue in the Superior Court and of the testimony which he proposed to print,—(some 400 pages)—but the court, after consideration of his petition, was of the opinion that all of the testimony of the case should be printed. On June 16, appellant presented his petition to this court asking it to hear the appeal in forma pauperis, alleging that a transcript of testimony of 1,600 pages had been filed in the record and that he was without funds and was financially unable to print the same, whereupon this court granted a rule on the district attorney, and after due consideration of the petition and answer, not being satisfied that the appellant was financially unable to print the brief and record, we discharged the rule.

On June 26, 1933, the appellant presented his petition to this court setting forth that it was a physical impossibility to prepare the case and print the 1,600 pages of the record and prepare the argument by July 12, 1933 and, therefore, prayed the court to continue the case until the first Monday of October, 1933, in which petition the district attorney joined, and accordingly the court on June 27, 1933 continued the argument until the first Monday of October, 1933.

When the case was called for argument on the first Monday of October, 1933, the appellant presented a brief of 34 pages and a printed record of 180 pages, which contained nothing but the bill of particulars elaborating the complaint, filed pursuant to the petition of Dalton and Statzell, the address of the assistant district attorney to the jury, the charge of the court, the opinion of the court and the sentence. It

did not contain a copy of the docket entries, nor the indictment in question, nor any of the testimony, (See our rule No. 45, par. 1, 4, 7, 9) for the printing of which the appellant had secured three continuances. No justification is apparent for taking up nearly fifty pages of the printed record with the address of the assistant district attorney, for none of it is assigned or quoted verbatim in the specifications of error. While this address appears in the official record filed in the case and is certified to by the court stenographer and the trial judge, there does not appear in the proceedings in the case of record, apart from the certificate pursuant to the writ of certiorari, any order of the court directing that it should form part of the record of the case. See Com. v. Del Vaccio, 299 Pa. 547, 554, 149 A. 696. We are informed by counsel for appellant that prior to the address he asked the trial judge to instruct the court stenographer to take down the address in shorthand, and that the judge verbally gave the instruction requested, but this was apparently done either in chambers, or at side bar, and was without any notice to or knowledge of the district attorney or his assistant. The record does show an order made by the court on July 12, 1932 on motion of the attorneys for the defendant to 'transcribe' the address of William R. Toal, assistant district attorney in the 'above recited case.' See, however, Com. v. Flori, 300 Pa. 125, 130, 150 A. 290.

Such important omissions from the record and flagrant violations of our rules impel us to quash the appeal; but as the case is a criminal one and the result would be to deprive the appellant of his liberty, we have examined the original record on file in the prothonotary's office in order that no injustice may be done the appellant by this course; for our rules of court, which were adopted to secure and expedite justice, should not in a deserving case be used to defeat that end. This examination has satisfied us that

the testimony was ample to sustain the appellant's conviction on the charge covered by the judgment appealed from; in fact, we do not see how any other result than a finding of guilty could reasonably be arrived at from a consideration of the evidence relating to this charge. The evidence offered by the Commonwealth tended to show that on or about July 25, 1930 one Robert H. Davis, who had acted as a straw man for the appellant in various other real estate transactions, was asked to come to the office of the appellant in the Packard Building, Philadelphia, where at the request of the appellant's secretary, Miss Gregg, he executed three papers in blank, which were afterwards filled out as three mortgages for $4,000 each, known as mortgage loans numbers 941, 942 and 943, covering three vacant lots of ground on Surrey Road near School Lane, each fronting 25 feet by 57½ feet in depth, exclusive of a ten-foot wide driveway at the rear. He also endorsed two checks in blank which were afterwards filled out as the net proceeds of these mortgage loans, one for $3,957.50 being the net proceeds of mortgage loan No. 941, and the other for $7,941 being the net proceeds of mortgage loans 942 and 943 together. The applications for these mortgage loans were filled out in Davis' name, though he never saw them, and the lots, which, the Commonwealth's witnesses testified, were really of the value of $500 or $600 apiece, were appraised by Hardcastle, Statzell and Wilcox at $7,500 each. Wilcox handed the checks, which were signed by John M. Hardcastle, Jr., title officer, and approved by John M. Hardcastle, Jr., settlement clerk, and which had been endorsed in blank by Davis to Hardcastle requesting him to get the money in cash. Hardcastle took the checks to Dalton and asked him to get the cash. Dalton took the checks to the teller, Paul J. Keller, and obtained the money and gave it to Hardcastle, who in turn gave it to Wilcox. Wilcox did not deny receiving the money; the

farthest that he would go in his testimony was that he did not remember the transaction; that he had looked in his bank books and found no entry of the money to his credit. The lots were either the property of Wilcox or had been conveyed by him to the Trust Company as security for his loans. These facts if believed—and there is no real dispute regarding them —fully justified the jury in rendering a verdict that the appellant had fraudulently converted to his own use the proceeds of these mortgage loans. In fact, as has already been said, no other conclusion could reasonably be drawn.

The appellant has filed eighteen assignments of error. The first five of them relate to the admission of evidence, or the refusal to strike out evidence, bearing on indictments other than the one appealed from. They are largely based on alleged discrepancies between the evidence produced by the Commonwealth and the bill of particulars elaborating the complaint hereinbefore referred to, the itemized complaint referring to a mortgage of a certain date on property in Delaware County for a certain sum, while the proof related to two or three mortgages of that date on the property, aggregating the same amount. They are not of such a character as to have any bearing on the judgment under review. Besides, the appellant is not in a position to assign them for error for he asked for no bill of particulars; the bill of particulars filed was confined to the complaint, not to any indictment. The indictments to which the evidence related were district attorney's bills which were not based on any complaint, and were sufficiently specific to require no bills of particulars. The sixth assignment asked the court to direct a verdict of not guilty as to indictment No. 252A1, the one under review. As before shown this could not properly be done for the facts in evidence fully warranted the appellant's conviction in manner and form as he stood indicted. The seventh assign-

ment of error is so general and indefinite as to justify the court in refusing it. As we have often stated before, a court is not bound to remold points. If, as presented, they cannot be affirmed, the court is justified in refusing them. The remaining assignments, exclusive of the last one, which is a formal exception to the sentence, are directed to the refusal of the defendant's motion to withdraw a juror and continue the case because of the alleged hysterical and inflammatory remarks of the assistant district attorney. The errors specified were not to the transcribed address of the assistant district attorney, but to counsel's notes or recollection of the address, which were not verified.

The Supreme Court has departed a long way from its original pronouncement in Com. v. Nicely, 130 Pa. 261 (1889), 18 A. 737, that there was no way by which objectionable remarks of counsel in an argument to the jury might be brought upon the record and assigned for error; reiterated in McCloskey v. Bell's Gap R. R., 156 Pa. 254 (1893), 27 A. 246, when it held that remarks of counsel to the jury were not reviewable as error.

In Com. v. Weber, 167 Pa. 153, 31 A. 481, it held that such remarks if objected to and request made to the court to withdraw it from the consideration of the jury, could be considered on review, if the court below failed so to act. But stress was laid on the necessity of the objection being made at once, Mr. Justice DEAN saying: "There is no distinction, in this respect, between improper evidence and improper argument. It is the duty of counsel to aid the court by their learning and fidelity, in the administration of justice; any other rule of duty would, probably, lead to very undesirable results; because, without it, the most effective defense astute counsel could make for criminals with a hopeless case on the evidence, would be, by silence, to invite errors of omission and commission by the court and opposing counsel, with the ob-

ject of securing reversals on review; and thus, by persistent, expensive and vexatious appeals, wear out the prosecution'' (p. 164).

This was followed by establishing two well recognized methods of procedure by the party objecting to the remarks of counsel: (1) Following the objection and request for the withdrawal of a juror, the court should direct the stenographer to place upon the record the remarks *as the court understood them;* (2) failing to do so the counsel may place the remarks on the record by affidavit: Com. v. Shoemaker, 240 Pa. 255, 87 A. 684; Com. v. Shields, 50 Pa. Superior Ct. 1, 24; Faust v. Cotner, 105 Pa. Superior Ct. 177, 182, 160 A. 155; Com. v. Tauza, 300 Pa. 375, 380, 150 A. 649. But whichever course is pursued the objection and request for the withdrawal of a juror should be made at once, as soon as the objectionable language is used: Com. v. Windish, 176 Pa. 167, 170, 34 A. 1019; Com. v. Ezell, 212 Pa. 293, 296, 61 A. 930; Com. v. Shields, supra, p. 24. The expression used in Com. v. Windish was, ''while it was being delivered;'' and in Com. v. Ezell, ''when counsel misstate facts or material evidence, or resort to comment unfairly or unduly prejudicial to the other side, it is the duty of the opposing counsel at once to call the attention of the court to the matter, and the action of the court may then become the subject of exception. In general it is matter for discretion and reviewable only for abuse'' (p. 296).

In a long extended trial, especially, it is only fair to the court and jury, no less than to the district attorney, that if the latter's remarks to the jury be deemed objectionable, exception be taken to them at once, so that the court may immediately instruct the jury to disregard them, if the matter is not so objectionable as to require the withdrawal of a juror, and warn the speaker to be more careful in the future, restricting himself to fair discussion of the evidence,

the inferences reasonably to be drawn therefrom and fair and restrained argument to the jury based thereon. Otherwise in the ardency sometimes incident to the trial of a hotly contested case, and in the reply to counsel who have forcefully and enthusiastically presented the defendant's case in perhaps a more favorable light than it deserved, the Commonwealth's officer may not be aware that what he is saying is objectionable to the defendant, and thus go on repeating and adding to what would have been eliminated if the defendant's counsel had promptly and at once voiced his objection.

That was the case here. During the delivery of the assistant district attorney's closing address to the jury, which covers 42 printed pages, and was given in reply to what he tells us was a fervid and forcible appeal by defendant's counsel, not one word of objection or exception was made by counsel for defendants until its conclusion, and then objection was formally entered to almost every subject that he had touched upon or treated, taking up almost ten printed pages. The objections are too many and too long to be considered here seriatim; but may be grouped into several general heads or divisions.

Complaint is made that the Commonwealth's officer said the defendant was guilty of the offenses charged against him, and Com. v. Ronello, 251 Pa. 329, 96 A. 826, is relied on to secure a reversal; but in that case the district attorney repeatedly and in most vigorous fashion asserted *his own personal belief* in the defendant's guilt (p. 338). The Commonwealth's attorney may always argue to the jury that the evidence establishes the guilt of the defendant, and that certain facts in evidence are conclusive of such guilt. In Com. v. Bubnis, 197 Pa. 542, 546, 47 A. 748, the district attorney said, "I say now, when I debate the first proposition in this case that Rollis Bubnis is guilty of murder in the first degree, and I shall prove it beyond any

peradventure of a doubt." The Supreme Court said, speaking through Mr. Justice Brown, afterwards Chief Justice: "We are not prepared to say that this language standing alone, would be just cause for disturbing the judgment before us, and it certainly is not, when we turn to the record and find, that, the attention of the trial judge having been called to it, he said, 'Both counsel state their position from different standpoints, that it is for the jury to pass upon whether the statements of defendant's counsel or the statements of the district attorney are in accordance with the evidence.' These words of the court made harmless those uttered by the Commonwealth's officer." In Com. v. Meyers, 290 Pa. 573, 580, 139 A. 374, the assistant district attorney in opening the case, said, "If the circumstances are as narrated, they are so aggravated that the electric chair is too good for the defendant." The Supreme Court refused to reverse. In Com. v. Hadok, the latest utterance of the Supreme Court on the subject, 313 Pa. 110, 169 A. 111, the district attorney, in his closing address, produced an envelope containing a letter dated January 29, 1932 which the defendant admitted having signed, written in the Croatian language, and showing that he then knew of the bank robbery and the killing of McFarland, which contradicted his evidence in chief that he had not learned of the crime until January 30, 1932, after he was arrested and in jail, in which letter he asked the person to whom it was addressed to see a lawyer and get witnesses who would testify that he was at home in Youngstown at the time of the killing; and said to the jury, "Nobody but a guilty man would write a letter in jail in a foreign language and slip it out, because if he was innocent he would write it in English and send it out through the proper authorities." The Supreme Court, speaking through Mr. Justice Drew, said: "It is contended that this remark constituted prejudicial error, in that it was beyond the

scope of the offer placing the letter in evidence, and because, in suggesting that the letter had been clandestinely removed from the jail, the district attorney was giving unsworn testimony. There is no merit in the contention. The letter was in evidence, and the remark of the district attorney was a reasonable inference that could properly be derived from the letter itself. It is the duty of a prosecuting officer to present the evidence against the defendant fairly and not misstate facts. But it in no way offends this rule for him to urge upon the jury inferences which can reasonably be drawn from the evidence. Such inferences are entirely proper for the jury to weigh and consider in determining their verdict ...... The remarks of the district attorney in this case did not in any way go beyond the limit of reasonable inference. The letter was written in jail, and in it the writer doubted that it would be received because it was written in a foreign language, against the rules of the institution. From these facts, and other statements in the letter, it was certainly not improper for the district attorney to argue that the letter, and the circumstances under which it was written, indicated guilt.''

In Com. v. Exler, 61 Pa. Superior Ct. 423, 429, the district attorney in his closing address had said to the jury: ''It is hard work to defend a guilty man; it is always hard work to defend one as guilty as he,'' when he was interrupted by counsel for defendant who moved to withdraw a juror on account of the remark. The district attorney said: ''At the point where I was interrupted by counsel for the defense I stopped, and not being addressed by the court, or stopped by the court, I finished the sentence that I was then uttering with these words, 'as we will show by the evidence that we have offered in this case.' '' This court, speaking through Judge KEPHART, said of this and the other exceptions to the district attorney's address, (see pp. 429, 430): ''The objections to the remarks of the dis-

trict attorney cannot fairly be the subject of error
...... The language used was a fair statement, considering the nature of the offense charged and the evidence presented.''

We do not read the statements objected to by this appellant, on this score, as being the personal belief of the speaker in the defendant's guilt but rather as stating the position of the Commonwealth that from the evasive and forgetful testimony of the defendant himself it had the right to infer his guilt.

Complaint is also made that the assistant district attorney said in his address that he hoped there were some members of the jury that knew the Springfield section and its value; and that perhaps somebody on the jury could tell the other members just what kind of a place it was. This was wrong and would have been corrected at once if objection had been made immediately. It was clearly and definitely corrected by the trial judge in his charge.

Complaint is also made that the assistant district attorney discussed matters not in evidence, in referring, inter alia, to the money as being the depositors' money. It was in evidence that the Suburban Title & Trust Co. had been taken over by the Secretary of Banking and was in process of liquidation. It is the law, and a matter of common knowledge, that in the winding up of such corporations the depositors have a preferred claim on the assets; that they are entitled to be paid in full before ordinary creditors or stockholders receive anything. It was not an unfair inference that in these large financial transactions the defendants were dealing with funds left with the Trust Company as deposits.

Complaint is also made that the whole tenor and effect of the address was inflammatory and calculated to stir up passion and prevent the defendant having the fair trial to which he was entitled. There was much in it that might well have been omitted. It con-

tained in the language of the Supreme Court in Com. v. Flori, 300 Pa. 125, 130, 150 A. 290, "specimens of advocacy not to be commended;" but just as in that case, we are "satisfied they played no real part in bringing about the verdict." The labor and expense of a long trial is not to be thrown away because of every unfortunate or ill-timed remark of the Commonwealth's attorney. This is seen by a review of the many cases where such remarks were not considered sufficiently injurious to require a new trial.

In Com. v. Pennington, 249 Pa. 536, 95 A. 107, the prosecuting attorney told the jury that if in the perpetration of a robbery, the defendant struck the deceased a blow from which he died, and they failed to render a verdict of guilty of murder in the first degree, they would violate their oaths. There was nothing in the present record as strong as this, but the judgment was affirmed per curiam.

In Com. v. Del Giorno, 303 Pa. 509, 518, 519, 154 A. 786, the Supreme Court held that a statement in the remarks of the assistant district attorney that the killing was a gang murder and that the police were unable to cope with it, did not require a reversal.

In Com. v. Del Vaccio, 299 Pa. 547, 554, 149 A. 696, the district attorney termed the defense, a "typical gunman's defense."

In Com. v. Massarelli, 304 Pa. 335, 339, 156 A. 101, the Commonwealth's attorney said the "defense was cooked up."

In Com. v. Smith, 270 Pa. 583, 586, 113 A. 844, the district attorney said to the jury that the "prisoner didn't have the heart of a man or the soul of a man."

In Com. v. Touri, 295 Pa. 50, 57, 144 A. 761, the assistant district attorney said to the jury referring to two witnesses of the shooting who were not produced by the Commonwealth because they had left the jurisdiction, "I will ask you to say that they are stay-

ing away from this jurisdiction for the purpose of helping this criminal.''

In Com. v. Davison, 99 Pa. Superior Ct. 412, the district attorney in reply to a remark of defendant's attorney said ''that the defendant might be called a skunk,'' spelling it out. See the very full discussion by Judge LINN, now of the Supreme Court.

After all, whether or not the judgment will be reversed because of the remarks of the district attorney depends not only on the remarks themselves but also on the attitude of the court following objection and the probable effect as reflected in the verdict of the jury: Com. v. Del Giorno, supra, pp. 518, 519. If the remark is of such a character as to violate the accused's constitutional rights, such as a reference to his failure to take the witness stand, it cannot be cured by the trial judge and a new trial must be ordered; but in other cases unless the remarks are too flagrant they can generally be cured by the instructions of the court. See Com. v. Bubnis, 197 Pa. 542, 47 A. 748; Com. v. Schoenleber, 96 Pa. Superior Ct. 76, 83; Com. v. Striepeke, 32 Pa. Superior Ct. 82; Com. v. Kosh, 305 Pa. 146, 161, 157 A. 479; Com. v. Cicere, 282 Pa. 492, 494, 495, 128 A. 446; Com. v. Davison, supra. In Com. v. Williams, 309 Pa. 529, 164 A. 532, largely relied on by the appellant both in his brief and oral argument, where the language used by the district attorney was violent in the extreme, the Supreme Court based its reversal on this point largely on the fact that the court did not cure the error by proper instructions to the jury to disregard the remarks, saying: ''The court's attention was called to these improper remarks through exceptions and although proper instructions might have cured the error, the jury was not instructed to disregard them'' (p. 535).

In the present case the trial judge devoted a considerable part of his charge to warning the jury that they were sworn to try the case according to the law

and the evidence, which was limited to the testimony of the witnesses who had been called and such documentary evidence by way of exhibits as had been admitted by the court. He informed them that they had no right to attempt to apply their own knowledge of the value of lands which were involved in the case, nor to communicate that knowledge to other members of the jury who were not acquainted with it. He specifically said: "During the trial, there have been some remarks in the way of repartee, or otherwise, passed between counsel for the Commonwealth and counsel for the defendant, and perhaps between counsel for the Commonwealth and counsel for the defendant and the court. Those remarks should have no part in your deliberation in this case. They are not evidence, and you have no right to consider them. You should disabuse your mind of anything of that kind. So that we say to you, to determine this case on the evidence and the law as we shall give it to you ....... We might say this about arguments of counsel: You have a right to consider the arguments of counsel, that is, the legitimate arguments of counsel based upon the evidence, and the reasonable deductions that may be drawn from the evidence. But, what the attorneys say, on the part of the Commonwealth or upon the part of the defendant, unless they are quoting the evidence, is not evidence. Of course, if they quote the evidence, why. you should consider that ...... Let me say again to you, don't permit any statements that have been made by the district attorney that are not evidence, or by the attorneys for the defendants that are not evidence, or anything this court has said, or anything you may think about the case outside of the evidence, to interfere with your verdict. You take this evidence, analyze it carefully, honestly, conscientiously, and when you return your verdicts, return such verdicts as will square your consciences with the oaths you took when you entered that jury-box." In our judgment the statements

of the assistant district attorney, though in some respects objectionable, were not of such a nature that they could not be cured by the instructions of the trial judge and we are of the opinion that in so far as they were objectionable they were cured by his instructions. The trial judge in his opinion refusing a new trial gave this subject most careful consideration, devoting over six pages (166-a to 172-a, inclusive) to a consideration of the address of the assistant district attorney and the instructions of the court regarding it, and came to the settled conclusion that "we are not convinced that the remarks made by the district attorney, as corrected by the court, resulted in any prejudice to the defendants, and, therefore, all of the reasons filed in support of a new trial in regard to the remarks of the district attorney are overruled." We are confirmed in our judgment by the fact that the verdict of the jury shows a careful and discriminating finding apparently free from all passion and prejudice. Had the verdict been a wholesale one finding the defendants guilty on all the indictments we might be led to the conclusion that the instructions of the trial judge had not cured the error of the district attorney, but on examining the verdicts on the several indictments we find that the defendant Wilcox, this appellant, was convicted on nineteen indictments and acquitted on twenty-four; the defendant Hardcastle was convicted on fourteen and acquitted on twenty; the defendant Dalton was convicted on one (No. 252H4) and acquitted on twenty-one; and the defendant Statzell was convicted on one (No. 252K3) and acquitted on seventeen. This, of itself, in our opinion, is proof positive that the remarks of the district attorney which are objected to by the appellant did not have the effect of inflaming the passions of the jury so that they were unable or unwilling to give the defendant the fair trial to which he was entitled. The evidence in the case was decisive

as to the guilt of this appellant on the indictment upon which he was sentenced and from which he has appealed. It is not likely that he will be sentenced on any of the other eighteen indictments on which he was found guilty—another example of the futility of over multiplying indictments. Bearing this in mind the words of Mr. Justice KEPHART in Com. v. Meyers, supra, are peculiarly applicable: "Where, under all the circumstances of the case, the verdict rendered is a just one, the language of the prosecuting officer which will justify a reversal must be such that its unavoidable effect would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant, so that they could not fairly weigh in his behalf such circumstances of doubt, extenuation or degree of guilt that may be present in the case, and thus make them unable to render a true verdict. The remarks of the district attorney in this case were merely an opinion on the evidence as narrated. Where the result of the trial is, as in this case, a correct finding it would require much stronger language than that complained of to cause us to declare a mistrial;" as is the following extract from the opinion of Judge ORLADY in Com. v. Sarves, 17 Pa. Superior Ct. 407, 411: "While the printed record indicates that in the contest before the jury excessive earnestness on the part of contending counsel was displayed, and expressions of very doubtful professional propriety were used, yet it is not clear that the manner of trial injuriously affected the defendant. Such forensic displays rarely affect the deliberate judgment of a jury, and in this case they were conducted under the supervision of the trial judge who fully guarded the rights of the defendant in a temperate and impartial charge."

The appeal is quashed and it is ordered that the record be remitted to the court below and that the defendant appear in said court at such time as he may

be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.

Submitted October 2, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*William C. Alexander,* and with him *John E. McDonough,* for appellant.

*William R. Toal,* Assistant District Attorney, and with him *William J. MacCarter, Jr.,* District Attorney, for appellee.

