## Commonwealth *v.* Stovas, Appellant.

*Appeals—Assignments of error—Answer to points.*

1. An assignment of error will not be considered which does not quote the judge's answer to a point totidem verbis although it contains the point.

*Criminal law—Conspiracy—Nature of conspiracy.*

2. A person cannot be convicted of conspiring to do an unlawful act, where it appears that the person with whom the prisoner was charged with conspiring made no agreement with the prisoner to do an unlawful act, and never intended to do it.

3. Where a prisoner is indicted for engaging in a conspiracy with certain unknown persons to dynamite street cars, and there is evidence that he stated to a witness that he had eight other men on the job on a particular night, and wanted to know where the witness was going to use the dynamite that night, there is sufficient testimony against the prisoner to submit to the jury.

4. On the trial of an indictment for conspiracy it is reversible error for the trial judge to submit the commonwealth's case to the jury as uncontradicted where the prisoner himself absolutely contradicts such testimony.

Argued Oct. 6, 1910.   Appeal, No. 166, Oct. T., 1910, by defendant, from judgment of Q. S. Phila. Co., May Sessions, 1910, No. 51, on verdict of guilty in case of Commonwealth v. Frank Stovas.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Reversed.

Indictment for conspiracy.   Before DAVIS, J.

The opinion of the Superior Court states the case.

Verdict of guilty upon which the court sentenced the prisoner to two years' imprisonment.   Defendant appealed.

*Errors assigned* were (1) in overruling defendant's motion to direct the jury to find a verdict of not guilty; (2–8) the motions of charge quoted in the opinion of the Superior Court; (9) in overruling defendant's motion for a new trial; (10) in overruling defendant's motion in arrest of judgment; (11) in sentencing the prisoner.

*B. D. Oliensis*, for appellant.—So far as the transaction between the witness and the defendant is concerned, it is respectfully submitted, there can be no conspiracy under the law: Com. v. Haines, 38 Legal Int. 53; Com. v. Zuern, 16 Pa. Superior Ct. 588; Com. v. Brown, 23 Pa. Superior Ct. 470; United States v. Frisbie, 28 Fed. Repr. 808; U. S. v. Cole, 5 McLean, 513.

*John M. Patterson*, assistant district attorney, with him *Samuel P. Roten*, district attorney, for appellee.—The

defendant was properly convicted: Com. v. Boulos, 35 Pa. Superior Ct. 102; Com. v. Zuern, 16 Pa. Superior Ct. 588; Com. v. Stambaugh, 22 Pa. Superior Ct. 386; Heine v. Com., 91 Pa. 145.

OPINION BY MORRISON, J., December 12, 1910:

The defendant, Frank Stovas, was indicted on May 3, 1910, in two bills, to wit, Nos. 51 and 52, May sessions, 1910, charging him in No. 51 with conspiracy and in No. 52 with furnishing dynamite to be placed on railroad tracks and attempting to cause dynamite to be placed thereon. Issue being joined on these indictments, the defendant was tried on both of them at once before the court and the same jury. The result was a verdict in each case of guilty. Subsequently motions in arrest of judgment were made in both cases and the judgment on bill No. 52 was arrested, but the court overruled the motion in arrest of judgment, and also for a new trial, on bill No. 51. Judgment was, thereupon, entered for the commonwealth in the last-named bill and the defendant sentenced to two years' imprisonment, etc. From this judgment and sentence the defendant appealed to this court. We, therefore, only have before us the appeal in the judgment in the conspiracy case.

The counsel for the appellant contends that the case was tried on the theory that the appellant could be convicted of a conspiracy with Stahl, the witness who testified that he purchased dynamite from the appellant and told him what he intended doing with it. The counsel for the commonwealth utterly repudiate the idea that they asked for a conviction of the appellant for an unlawful conspiracy with the witness Stahl. In their printed argument they say: "The appellant, on p. 5 of his paperbook, has stated as the first of the questions involved:

"'1. Conspiracy: Is there any criminal conspiracy in an agreement to do an unlawful thing entered into by the defendant and one other person, if the latter never actually agreed, but being a detective, merely pretended

to agree in order to obtain evidence against the defendant?'

"It is respectfully submitted that such a state of facts does not constitute a conspiracy; it is also submitted, however, that this question is in no way involved in the present case. The commonwealth never contended that the defendant conspired with Stahl. It was always the theory of the prosecution that Stovas, the defendant, conspired with unknown persons. The district attorney presented an indictment, charging the defendant with conspiracy with unknown persons, and the whole theory of the Commonwealth's case was along those lines."

Now turning to the indictment, it shows, "That Frank Stovas, late of the said county, yeoman, together with divers other evil disposed persons, whose names are to this grand inquest unknown, on March 21, 1910, at the county aforesaid, and within the jurisdiction of this court, did unlawfully," etc., fully charging a conspiracy by the appellant with persons whose names were unknown. It is not pretended that the witness Stahl was one of those persons. There seems to be a marked difference of opinion between the trial judge and the counsel for the commonwealth as to what was really submitted to the jury. It is undoubtedly the law that if Stahl was acting as a detective and he never agreed with appellant to do an unlawful act, but only pretended to so agree and never meant to do the act mentioned, such pretended agreement would not amount to a criminal conspiracy, and if the fact were so found, the appellant could not have been convicted of conspiracy with Stahl, even if the latter had been named in the indictment as a co-conspirator or if he had been one of the unknown parties.

"Conspiracy, therefore, is rather described than defined, and the description which seems to have the widest recognition and approval by the authorities declares a criminal conspiracy to consist of a combination between two or more persons for the purpose of accomplishing a criminal or unlawful object, or an object neither criminal

nor unlawful by criminal or unlawful means; or, as it has been more concisely expressed, 'the combination of two or more persons to do something unlawful, either as a means or as an ultimate end!'" The latter definition is by COLT, J., in Com. v. Waterman, 122 Mass. 43. See 6 Am. & Eng. Ency. of Law (2d ed.), 832.

Counsel for appellant well says that the sole and all important element of conspiracy, either at common law or under our act of 1860, is the unlawful combination, the meeting of the minds for an unlawful purpose. FIN-LETTER, J., in Com. v. Haines et al., 38 Legal Int. 53, well said: "The essential and controlling element is the combination or agreement of the parties. Without this there can be no conspiracy no matter how criminal the acts may be." In Com. v. Zuern, 16 Pa. Superior Ct. 588, we held as stated in the syllabus: "That which gives to the crime of conspiracy its distinctive character is unity of purpose, unity of design, and focalization of effort upon a particular project by the persons named in the indictment." In Com. v. Brown, 23 Pa. Superior Ct. 470, President Judge RICE (p. 493) quoted with approval the above definition from Com. v. Zuern.

In United States v. Frisbie et al., 28 Fed. Repr. 808, BILLINGS, J., said: "A conspiracy, as I remarked before, is a breathing together. It means that on the part of these three persons there was a common purpose, . . . . that each had the intent to do it; that it was common to the three men; and that each understood the others as having that purpose." Now if the witness Stahl testified truthfully, and there was nothing to discredit him, he never entered into a criminal conspiracy with the appellant and, therefore, the appellant could not be lawfully convicted under the indictment in the present case of an unlawful conspiracy with Stahl.

But the learned trial judge (judging from his charge to the jury) tried the case on the theory that the defendant could be convicted of conspiracy with Stahl, and presuming that the jury gave due regard to the charge it is highly

probable that the appellant was convicted of a conspiracy
with Stahl and not "with divers other evil disposed per-
sons, whose names are to this grand inquest unknown."
We have already seen that the commonwealth's counsel
admit that appellant was not charged with conspiracy
with Stahl and the latter name does not appear in the
indictment and it is conceded by the commonwealth's
counsel that Stahl was not one of the unknown persons
referred to in the indictment.

Now let us refer to the assignments of error to ascertain
on what theory the case went to the jury.  The first
assignment is not according to our rule and it cannot be
considered.  It is based on an alleged motion for a binding
instruction to the jury to acquit the appellant.  But the
motion and what the court said in disposing of it are not
printed, and there is not even a reference to where the
same may be found.  An assignment of error will not be
considered which does not quote the judge's answer to
a point totidem verbis, although it contains the point:
Hall v. Phillips, 164 Pa. 494; Dotterer v. Scott, 29 Pa.
Superior Ct. 553.  In this connection we may as well
dispose of the ninth and tenth assignments, because they
are open to the same objection and will therefore not be
considered.  The excerpt from the charge quoted in the
second assignment quite plainly instructed the jury that
the appellant could be convicted of a conspiracy if he
sold dynamite to the witness Stahl to be used for an un-
lawful purpose.  The trial judge said that would be a
conspiracy within the eye of the law.  Now, if the wit-
ness Stahl did not in fact enter into a conspiracy with the
appellant and did not intend to do an unlawful act, then
as we have already seen, the appellant could not be con-
victed of an unlawful conspiracy with Stahl.  The second
assignment is sustained.

The third assignment of error can only mean that the
appellant could be convicted of conspiracy, with the
witness Stahl.  The court said, inter alia: "If you believe
the testimony of the commonwealth's witnesses that there·

was an agreement to do an unlawful act, your verdict should be, guilty of the charge of conspiracy." This was said in connection with the portion of the charge referring to the selling of dynamite by the appellant to the witness Stahl. But how could this amount to a conspiracy in the face of Stahl's testimony that he made no agreement with the appellant to do an unlawful act, that he did not purchase the dynamite intending to use it and in truth and fact he did not intend to use it? If Stahl did not agree with the appellant to do an unlawful act, then there could be no conviction on the theory of the instruction quoted in the third assignment. The defendant positively denied that he entered into any agreement to do the unlawful act charged against him and denied selling any dynamite to Stahl, and while Stahl testified that he purchased the dynamite, telling the appellant that he was going to use it on the railroad tracks, yet he says he did not purchase it for that purpose and did not intend to use it for that purpose. The third assignment of error is sustained.

The fourth assignment complains of an excerpt from the charge on the question of the credibility of the witnesses and the weight to be given to their testimony. A careful consideration of this assignment does not convince us that it contains reversible error. After all it does not contain language calculated to bind the jury. The court merely cautioned the jury and then left the credibility of the witnesses and the weight of their testimony to be determined by that body. The fourth assignment of error is not sustained.

The fifth assignment is as follows: "The witness Stahl testified that he had eight other persons engaged in these acts of blowing up cars. That, in the absence of any contradictory evidence, must be considered by you, and you are entitled to take that testimony into consideration in arriving at your verdict in this case." The trial judge here fell into an error because the defendant testified positively that he never told the witness Stahl any such thing. The defendant testified: "Q. You did not sell

anybody dynamite? A. No, sir. Q. You did not say you had eight other men out putting dynamite on the tracks? A. No, sir, I did not know anything about that." In view of this testimony the trial judge ought not to have said to the jury that the testimony of Stahl about the eight other persons engaged in the acts of blowing up cars went to them in the absence of any contradictory evidence. The fifth assignment of error is sustained.

We do not discover any merit in the sixth assignment of error. It is quite evident that what the trial judge there said was called out by the argument of the appellant's counsel and we are not satisfied that the language used did the defendant any harm.

The seventh assignment is as follows: "If you believe the testimony of the witnesses for the commonwealth you would be justified in convicting the defendant as he stands charged. If, on the other hand, you believe the testimony of the defendant, that he never had anything to do with the commonwealth's witness, that he did not sell him the dynamite and that he was not connected with the transaction, then you would be justified in rendering a verdict of not guilty." Here the court was manifestly again instructing the jury that they might convict the appellant of a conspiracy with Stahl. In view of the testimony and the language used as quoted in the assignment, we cannot see how the jury could have escaped the conclusion that the court was of the opinion that they might convict the defendant of conspiring with Stahl. The seventh assignment of error is sustained.

The eighth assignment is as follows: "The defendant does admit that he saw Stahl on one occasion at least, and had some conversation with him in reference to dynamite, and it does not appear that he informed the police authorities that there was an attempt made by the commonwealth's witness to buy the dynamite." On careful consideration of this language we all think it was for the jury. In view of the conditions existing on the streets of Philadelphia at the time the defendant admits Stahl

desired to purchase dynamite from him, it would seem that an honest, law-abiding person would have reported to the police that Stahl, describing him, was trying to buy dynamite to destroy street cars. At any rate the jury had a right to determine from defendant's appearance and statements as a witness, if they could, what character of man they had to deal with. The eighth assignment of error is not sustained.

The ninth and tenth assignments of error have already been dismissed.

It is unnecessary to pass upon the eleventh assignment of error. If the appellant had been legally convicted we see nothing wrong about the judgment as therein quoted, except that the assignment does not quote the judgment of the court totidem verbis. But the sustaining of the former assignments calls for a reversal of the judgment, and this assignment is immaterial.

We are not prepared to say that there was not sufficient evidence in the case to warrant a submission to the jury of the question of the conspiracy of the appellant with the unknown persons mentioned in the indictment, or some of them, and, therefore, a new venire must be awarded. We are not willing to say that the testimony of Stahl, that the appellant told him that he had eight other men on the job that night and wanted to know in what part of the city Stahl was going to use the dynamite that night, as he, the appellant, did not want Stahl to come in contact with the other men who were going to use dynamite, for then there would be too many explosions at the one place, and the testimony that the appellant left the city upon learning that the police were looking for him, was insufficient to carry the case to the jury.

The judgment is reversed with a venire facias de novo.