# Commonwealth *v.* Gormley et al., Appellants.

*Criminal law—Fraudulent election returns—Conspiracy to make —Intention—Evidence—Admissibility.*

To make an agreement between two or more persons to do an act innocent in itself a criminal conspiracy, it is not enough that it appears that the act which was the object of the agreement was prohibited. The confederation must be corrupt. The agreement must have been entered into with an evil purpose, as distinguished from the purpose simply to do the act prohibited, in ignorance of the prohibition.

The criminal quality resides in the intention of the parties to the agreement, construed in connection with the purpose contemplated. The mere fact that the conspiracy has for its object the doing of an act which may be unlawful, followed by the doing of such act, does not constitute the crime of conspiracy, unless the jury find that the parties were actuated by a criminal intent.

On the trial of an indictment for conspiracy to make false election returns, and making such false returns, in violation of the 4th section of the Act of July 9, 1919, P. L. 839, an offer was made to prove by a witness, one of the defendants, that, although false returns were made, no intention existed to commit a crime. The court excluded the testimony on the ground that the defendant,

having violated the plain provisions of the statute, could not be allowed to give his reasons why he did so.

*Held:* Reversing the lower court, that on a charge of conspiracy to make false returns the testimony should not have been excluded, but that the defendant should have been allowed to explain the reasons for his action.

Whenever the belief or intent is material the defendant may testify as to what it was. And it was open to the jury to find, from the evidence, that no criminal intention existed.

Argued December 8, 1920. Appeal, No. 177, Oct. T., 1920, by Edward Gormley, from the judgment of Q. S. Schuylkill County, January Sessions, 1920, No. 60, on verdict of guilty in the case of Commonwealth of Pennsylvania v. Edward Gormley, Joseph Joulwan, William J. Voyne, A. S. Faust and John Toppy. Before Orlady, P. J., Porter, Henderson, Head, Trexler, Keller and Linn, JJ. Reversed.

Indictment for conspiracy to make false return for election and for the insertion of false figures in tally sheets in violation of the Act of July 9, 1919, P. L. 839. Before Berger, J.

The facts are stated in the opinion of the Superior Court.

The jury returned a verdict of guilty as to the first count, conspiracy, and not guilty of the second count, inserting false figures in the tally sheet. Judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence, the charge of the court and refusal of defendant's motion for a new trial.

*James B. Reilly* and *John F. Whalen,* and with them *H. O. Haag* and *M. W. Burke,* for appellants.

*M. A. Kilker,* and with him *Cyrus M. Palmer,* District Attorney, and *C. A. Whittehouse,* for appellee.

OPINION BY TREXLER, J., July 14, 1921:

The fourth section of the Act of July 9, 1919, P. L. 839, provides the method to be employed by election officers after the closing of the polls in ascertaining the result of primary elections. The fifth section provides that "any election officer or clerk of the county commissioners or other person who knowingly inserts or knowingly permits to be inserted any fictitious name, false figure, or other fraudulent entry on or in any assessor's list, register, list of voters, affidavit, tally paper, return sheet, statement, certificate, or oath, voucher, ballot or other record or document, authorized or required to be made, used, signed, required, returned or preserved for any public purposes in connection with any primary— shall be guilty of a misdemeanor." The indictment charged the defendants in the first count with conspiracy to violate the above sections of the Act of 1919, by falsely and unlawfully making a record of the votes cast at an election upon the official tally sheets and return sheets before the time set by law and before the votes were legally ascertained. The acts done in pursuance of the agreement are set out in the indictment. In other words an executed conspiracy is charged. The second count charges the insertion of false figures in the tally sheets and makes no reference to the conspiracy. The jury returned a verdict "Guilty as to the first count, conspiracy, and not guilty of the second count, inserting false figures in the tally sheet." It clearly appeared at the trial of the case that the defendants had admitted on a former trial under another indictment that they had inserted figures on the tally sheets before the closing of the polls for the candidates having no opposition. The defendants did not attempt to deny that such tallies had been inserted, nor did they offer to contradict the witness that testified that they had admitted under oath at a former trial that they had inserted the tallies before the votes were counted. There were a number of propositions of proof made by the defend-

ants which the court refused.  Without considering them in detail we think they are substantially summarized in the offer which forms the basis of the fourteenth assignment which reads thus: "We propose to ask the witness to explain to the court and jury what understanding or agreement there was between the officers of this election board as to the manner in which the election was to be conducted, the votes counted and the tally sheets made up, he being a defendant, named, called to the stand.  This for the purpose of showing that this witness did not on that day, as alleged in the first count of this indictment, fraudulently, maliciously and unlawfully conspire, combine, confederate and agree with the other officers of this board already named; for the purpose of showing that what was done in the matter of the conduct of this election on that day by the defendant and the others, the other officers named, was done in good faith, and with no fraudulent intent, and without malice."  The reason for the courts' refusal of this point and others of the same nature was that a defendant having violated the plain provisions of a statute, he cannot give his reasons why he did so.  That a violation of the act subjects the defendant to the penalties prescribed whether he is conscious that he is violating the law or not.  This view is no doubt correct as applied to the second count of the indictment charging a violation of the election laws.  The legislature can declare an act a crime regardless of intent.  As to the charge of conspiracy, we think the testimony was admissible.  This is the pivotal question in the case.  May a defendant when charged with conspiracy show that he had no intention to violate the law; that there was no corrupt motive?  In the consideration of the question it must be remembered that the conspiracy is a distinct offense.  The overt act does not constitute the crime.  It may be the evidence of and sometimes said to be an aggravation of it: Com. v. Bartilson, 85 Pa. 482; the means by which the Commonwealth is enabled to prove the conspiracy:

Com. v. McHale, 97 Pa. 397. The conspiracy to commit an offense is a different crime from the crime that is the object of the conspiracy, the essential element of a crime unless otherwise declared by statute is the intent to commit it or the wilfulness of it: Com. v. Junkin, 170 Pa. 194. In Shannon and Nugent v. The Com., 14 Pa. 226, GIBSON, C. J., states obiter that to sustain a charge of conspiracy "it ought at least to appear that not only the end to be accomplished but the motive for it, was wicked." In Com. v. The Sheriff, 8 Phila. 645, PAXSON, J., held that to render a combination to incarcerate a person in an insane asylum criminal there must be a corrupt motive. See also opinion of KING, P. J., in Com. v. Ridgeway, 2 Ashmead 247.

The leading case in other jurisdictions is that of People v. Flack, 125 N. Y. 324. In that case there was a charge of conspiracy to institute and maintain an action of divorce without the knowledge of the plaintiff. It was held that "the formation of a common design by two or more persons is never simpliciter a criminal conspiracy. This may be and often is perfectly innocent. The criminal quality resides in the intention of the parties to the agreement, construed in connection with the purpose contemplated. The mere fact that the conspiracy has for its object the doing of an act which may be unlawful, followed by the doing of such act, does not constitute the crime of conspiracy, unless the jury find that the parties were actuated by a criminal intent. In many cases this inference would be irresistible, in others the jury might find that, although the object of the agreement and the overt act were unlawful, nevertheless the parties charged acted under a misconception or in ignorance, without any actual criminal motive. If that conclusion should be reached by the jury, then whatever other criminal penalties the parties might have incurred, the crime of conspiracy would not have been established and the defendant would be entitled to an acquittal. The actual criminal or wrongful purpose must accom-

pany the agreement, and if that is absent the crime of conspiracy has not been committed." The above case followed that of People v. Powell, 63 N. Y. 88, in which it was said, "To make an agreement between two or more persons to do an act innocent in itself a criminal conspiracy, it is not enough that it appears that the act which was the object of the agreement was prohibited. The confederation must be corrupt. The agreement must have been entered into with an evil purpose, as distinguished from a purpose simply to do the act prohibited, in ignorance of the prohibition. This is implied in the meaning of the word conspiracy." And later on it was said: "It was open to the jury to find upon the evidence that no criminal intention existed; and if this had been found to have acquitted the defendants." In Wood v. State, 47 N. J. 461, the Powell case above quoted was followed and the same principal announced, i. e., that an actual criminal intention belongs to the definition of conspiracy. See 12 Corpus Juris 552.

It follows that if a material part of the crime is the intention, the defendant may introduce any testimony that throws light on it. On the charge of making fraudulent entries on the tally sheet, the defendants had no right to show their intention and ignorance of the law was no answer to the charge, but the trial being had upon two counts, one charging conspiracy, the testimony should not have been excluded and defendants should have been allowed to explain their action and their motives. Whenever the belief or intention is material, the defendant may directly testify as to what it was: Wigmore on Evidence, sec. 581; Sections 245, 655, and 1789; Com. v. Hazlett, 14 Pa. Superior Ct. 352.

The conclusion we have arrived at would permit us to sustain many of the assignments of error, but there may be some objection as to the form of some of them. The questions raised seem to have been clearly and properly put in the fifth, seventh, eleventh, thirteenth and fourteenth assignments which are sustained.

We do not think that the acquittal of the defendants on the second count operates as an acquittal on the first: see Wilson v. Com., 96 Pa. 56.

The judgment is reversed with a venire facias de novo.

Similar orders were made in the appeals taken by the four other codefendants.