Commonwealth *v.* Kelson, Appellant.

Argued December 12, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Nathan H. Leventon,* with him *Maurice Louik,* for appellant.

*Earl R. Jackson,* Assistant District Attorney, with him *Andrew T. Park,* District Attorney, for appellee.

OPINION BY RHODES, J., January 31, 1939:

Appellant, Morris J. Kelson, and his codefendant, A. J. Balter, were convicted on four bills of indictment charging conspiracy. Appellant was sentenced to not less than one or more than two years on each bill, each sentence to run consecutively and to begin and take effect at the expiration of the previous sentence. Appellant's motion for a new trial having been refused, these appeals were taken. Balter, who was paroled after sentence, did not appeal.

Three questions have been raised for our consideration: (1) Was the evidence sufficient to sustain the convictions of appellant? (2) Was reversible error committed by the trial judge in refusing appellant's motion to withdraw a juror, because of the remarks by the assistant district attorney in his address to the jury? (3) Were the sentences imposed on appellant in conformity with law?

One indictment (No. 48, February Sessions, 1937) upon which appellant and Balter were convicted charged

that they "unlawfully did then and there falsely and maliciously, combine, confederate, conspire and agree together and with another person and other persons whose name and names are to this inquest unknown, to commit an unlawful act prohibited by law, that is to say, to unlawfully, wantonly, wilfully and maliciously destroy, damage and injure a certain building and other property contained in said building there situate in the County of Allegheny, of and belonging to Arthur Resnick, trading and doing business under the fictitious name, style and title of Peter Pan Cleaners, by the explosion of gunpowder, dynamite, nitroglycerine and other explosive substance to be placed and thrown in, into, upon, under, against and near said building and other property contained in said building as aforesaid."

Another indictment (No. 49, February Sessions, 1937) in the same language charged the said defendants with conspiring to maliciously destroy by explosives the building and property "belonging to Brent Stores, Incorporated."

The third indictment (No. 846, September Sessions, 1937) charged that appellant and Balter "unlawfully, did falsely and maliciously combine, confederate, conspire and agree together and with another person and other persons whose name and names are to this inquest unknown to unlawfully and feloniously possess and carry noxious liquid gas and substance with intent to use the same unlawfully against the property of Arthur Resnick and David Resnick, doing business under the firm name, style and title of Peter Pan Cleaners."

The fourth indictment (No. 847, September Sessions, 1937) was the same as the third with the exception that the owners of the property therein mentioned were "J. H. Marcus, M. A. Marcus and Daniel Marcus, partners, doing business under the firm name, style and designation of Brent Cleaners."

It is contended on behalf of appellant "that the Commonwealth may have introduced sufficient evidence to convict the appellant with the commission of a specific

criminal act, but failed to introduce sufficient evidence to establish a conspiracy." "It has often been held that a conspiracy is an agreement to do an unlawful thing, or to do a lawful thing in an unlawful manner. The offense is complete the moment the agreement is made, whether acts be done in pursuance of it or not: *Heine v. Com.,* 91 Pa. 145; *Com. v. Stovas,* 45 Pa. Superior Ct. 43; *Com. v. Haun,* 27 Pa. Superior Ct. 33": *Com. v. Yerkes,* 52 Pa. Superior Ct. 68, at page 73. The parties to the agreement must be actuated by criminal intent. *Com. v. Gormley et al.,* 77 Pa. Superior Ct. 298. But it is proper for the Commonwealth to establish the conspiracy by proof of subsequent acts and circumstances *(Ballantine v. Cummings,* 220 Pa. 621, 631, 70 A. 546; *Rosenblum v. Rosenblum et al.,* 320 Pa. 103, 105, 181 A. 583), which must be sufficient to warrant an inference that the corrupt confederation had been in point of fact formed for the purpose charged *(Com. v. Mc-Gurk et al.,* 105 Pa. Superior Ct. 383, 388, 161 A. 473).

Rarely, in a conspiracy case, is the Commonwealth able to prove an express confederation, and in *Com. v. Tilly,* 33 Pa. Superior Ct. 35, we held that such proof was not necessary. In *Com. v. McGurk et al.,* supra, p. 388, we reiterated this statement. Overt acts would be evidence from which a conspiracy could be inferred. *Com. v. Sanderson,* 40 Pa. Superior Ct. 416, 473; *Com. v. Bartilson et al.,* 85 Pa. 482. See, also, *Hester et al. v. Com.,* 85 Pa. 139, 156; *Com. v. Strantz,* 328 Pa. 33, 44, 195 A. 75. In the recent case of *Com. v. Strantz,* supra, at page 43, our Supreme Court, in an opinion by Mr. Justice MAXEY, said: "The heart of every conspiracy is a common understanding, no matter how it comes into being. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. In *Com. v. Jermyn,* 101 Pa. Superior Ct. 455, 465, the Superior Court, speaking through Judge GAWTHROP, aptly said: 'The joint assent of minds re-

quired to sustain a charge of conspiracy may be inferred from facts which establish ...... that the conspiracy had been formed.' "

In the instant case the Commonwealth was obliged to rely upon circumstantial evidence to establish the conspiracies alleged in the indictments. Hence, as said in *Com. v. Pasco*, 332 Pa. 439, at page 443, 2 A. 2d 736, at page 738, in an opinion by Mr. Justice BARNES: "It is fundamental that when a charge of crime is sought to be sustained by circumstantial evidence, the facts and circumstances must not only be consistent with and point to the guilt of the accused, but they must be inconsistent with his innocence." See *Com. v. Benz*, 318 Pa. 465, 472, 178 A. 390; *Com. v. Bardolph et al.*, 326 Pa. 513, 521, 192 A. 916; *Com. v. Bone*, 64 Pa. Superior Ct. 44; *Com. v. Goldberg et al.*, 130 Pa. Superior Ct. 252, 196 A. 538.

Appellant and his codefendant Balter were interested in organizing the independent retail tailors and drycleaners in Pittsburgh and vicinity. Balter was an officer of the organization, and appellant was business manager and organizer. The objective was to have all those operating as retail tailors and drycleaners charge the same prices; the dues of each member would be $2 per month. In the fall of 1936 appellant and Balter called upon officers of Brent Cleaners, or Brent Stores, and the owners of Peter Pan Cleaners after Balter had arranged for the interviews. Appellant, who did the talking, sought to have these concerns join his organization in order that prices in the cleaning business might be stabilized in the city of Pittsburgh, and asked that they raise their minimum price of 39 cents per garment to 59 cents. Commonwealth witnesses testified that in reply they stated to appellant that uniform prices could not be maintained because all drycleaners did not do the same character of work, and that all were not equally competent; that previous attempts had been made to raise prices, but that it had been impossible to

maintain them; that fixed prices could not be maintained and enforced in their business in that district. It was testified that appellant replied that prices could be raised, fixed, and maintained; that it had been done at other places such as Detroit, Toledo, and Cleveland; that it could be done in Pittsburgh and vicinity. The representatives and owners of the concerns interviewed said to appellant and Balter that they were aware of the method used in the other cities to fix and maintain prices; that the methods used in those places consisted of violence, destruction of property, and bombing of business places; that they would have nothing to do with such methods. Appellant said that he had methods of his own to enforce price fixing; and when they repeated the above methods as being the methods used, he made no denial that they were the methods which he proposed to use.

The concerns contacted refused to negotiate with appellant. He advised their representatives that they would hear from him again, and that a meeting would be called to which they would be invited. They were later invited or notified by letter to attend a meeting at the Hotel Henry, Pittsburgh, which they did not attend. They were subsequently notified that January 1, 1937, was fixed as the deadline for them to accede to appellant's demands. Not having complied within the time limitation, various stores of the concerns contacted by appellant and Balter were stench bombed, and much of their property destroyed. Two stores of Brent Cleaners were bombed with stench bombs on January 11, 1937. This was followed by the bombing of other stores in February. Appellant was then called and advised that the business of Brent Cleaners was being damaged to such extent that a compromise was sought in order that the damage might be stopped. Appellant replied: "Let us standardize the prices and I will show you this thing will be stopped." It was then agreed that the minimum price charged by Brent Cleaners be

increased to 59 cents per plain garment. Peter Pan Cleaners raised their price accordingly and for similar reasons, and appellant was advised of their compliance with his demands. A few days later two more stores of Peter Pan Cleaners were bombed, and when complaint was made to appellant that he had not carried out his part of the agreement he said that it was too late to call it off on such short notice, but that there would be no further outbreaks. Prior to surrendering to appellant's demands, Peter Pan Cleaners had 19 or 20 of their stores in Allegheny County stench bombed, some stores being bombed twice. Later, when the agreed price structure collapsed and this concern reduced its prices, some of their stores were again bombed. When appellant and Balter first interviewed the owners of Peter Pan Cleaners, appellant, it was testified, stated that if they did not comply with his demands they would be given the same treatment as used in the other cities; that "Well, you know what happened in Cleveland and Toronto and Detroit. The same thing would [will] happen here." It was also testified that Balter asked on this occasion that the owners of Peter Pan Cleaners give him the locations of their stores. After complying with appellant's demand to raise to 59 cents the minimum for plain garments, he insisted that the price be again raised to 69 cents by these two concerns, whereupon he would see that the group which he was representing and organizing would raise the minimum price to 79 cents.

Commonwealth's testimony also discloses that to one independent drycleaner appellant stated that unless he paid his $2 per month dues he would be put out of business.

After the last bombing it was testified by M. A. Marcus, of Brent Cleaners, that appellant told him that he would not fight them as he had previously done, but that he was going to fight them in the open. We think that the Commonwealth's evidence, although circumstantial, is sufficient to establish conspiracies on the

part of appellant and others to bomb and destroy the property of Brent Cleaners and the property of Peter Pan Cleaners. Although appellant's codefendant Balter took the stand and denied the conversations narrated by the Marcuses, of Brent Cleaners, and the Resnicks, of Peter Pan Cleaners, appellant did not present himself as a witness to deny any of the statements attributed to him. Appellant was obliged to have the cooperation of the two concerns which he contacted in order to accomplish his purpose of organizing the independent tailors and drycleaners of Pittsburgh and vicinity, by each of whom a two-dollar monthly fee was to be paid to his organization. These two large concerns had chains of stores. Consequently, an increase in the price charged by the independent operators could not be made and maintained unless there was a corresponding increase in the prices charged by both of the large concerns; obtaining one would not suffice. The evidence discloses a connection between appellant and Balter as they were both officers of the organization, which was to include all the independent retail tailors and drycleaners. Balter took the initiative in arranging for the conferences with the representatives of the two concerns whose cooperation was vital to the success of their organization. Having made the contacts Balter sat in the meetings, heard appellant state his terms, speak of his methods, and convey the threats of action if there was noncompliance. Following noncompliance with appellant's demands, the many stores of those two concerns upon which the demands were made were repeatedly bombed and their property destroyed. The admission of appellant, as testified to by a Commonwealth witness, to the effect that he did not have sufficient time to notify the others to cease the bombings of the Peter Pan stores after that concern had accepted his terms, is significant. These results could only be accomplished by appellant by confederating with others and having their assistance and cooperation

for the unlawful purposes charged; and the evidence was sufficient to warrant the jury's finding that an unlawful combination of appellant and others had been formed for the purpose of bombing and destroying the property of Brent Cleaners and the property of Peter Pan Cleaners in order to force their acceptance of appellant's demands. See *Com. v. Avrach,* 110 Pa. Superior Ct. 438, 441, 168 A. 531. It is our conclusion that the facts and circumstances are not only consistent with and point to the guilt of appellant, but that they are inconsistent with his innocence, and that the proof offered by the Commonwealth measures up to the exacting standard defined in our various decisions involving the charge of conspiracy where the evidence is purely circumstantial. That appellant was guilty of conspiracy, as charged in indictment No. 48, February Sessions, 1937, and in indictment No. 49, February Sessions, 1937, is the only reasonable interpretation in our judgment of which the facts shown by the Commonwealth are susceptible.

While the assistant district attorney was addressing the jury on behalf of the Commonwealth, counsel for the defense interrupted and moved that a juror be withdrawn and the case continued, because of alleged inflammatory and prejudicial remarks of the assistant district attorney. It appears from the record that in cross-examining a witness for the Commonwealth counsel for appellant asked the following question: "Did you hear him [assistant district attorney] say to Resnick and Marcus that 'You be sure and say that and we will get a conviction in this case'?" To which the witness answered: "No, sir." The record then contains the following: "Mr. Jackson: I demand that that be proven if the Court please. Mr. Sherman: With the greatest of pleasure we will prove that. The Court: Very well, for unless you have evidence to that effect the question should never have been asked." No proof was offered, and obviously some reference was made in the address

to the jury by the assistant district attorney to this insinuation and the failure to offer proof, which attorney for appellant apparently construed as a reflection upon him. To counsel's request for the withdrawal of a juror, the trial judge asked: "What remark are you talking about? There is nothing on the record. If you want it taken down it can be taken but don't interrupt." Again, when the trial judge inquired what remarks counsel was speaking of, counsel replied: "The remarks referring to associate counsel as being unethical and his conduct being that of a shyster, or whatever language it was." To this the assistant district attorney replied, "I didn't call him a shyster." The trial judge denied the motion to withdraw a juror, and the record before us fails to disclose the exact remarks which appellant contends constitute prejudicial error. The attention of the trial judge was not called to any specific remarks of the assistant district attorney notwithstanding that he specifically asked counsel of what remarks they complained, and no request was made that the words used be placed upon the record. Therefore, the trial judge could not well direct the stenographer to place upon the record the remarks as the court understood them, and counsel did not place the remarks on the record by affidavit. See *Com. v. Wilcox*, 112 Pa. Superior Ct. 240, 170 A. 455, affirmed 316 Pa. 129, 173 A. 653. To this court complaint is now also made that the trial judge neglected to caution the jury to disregard the remarks of the assistant district attorney, and by implication agreed with the statements made by him to the jury. Counsel had an opportunity to call to the attention of the trial judge that he had failed to charge upon this point if counsel regarded the same as essential to the defense. At the conclusion of the charge the trial judge asked counsel: "Is there any other branch of this case, gentlemen, that you desire further instruction upon?" On this point none was asked, and only a general exception was taken to the charge. To appellant's brief in

142

this court are now attached two affidavits sworn to on the 28th day of November, 1938, by David Turets, counsel for A. J. Balter, and Harry Alan Sherman, who was counsel for appellant at the trial. The trial was held on May 25, 1938. In these affidavits it is averred that the alleged remarks of the assistant district attorney reflecting upon Mr. Sherman were: "We have a name for such lawyers, we call them shysters." These alleged remarks were not called to the attention of the trial judge or the court below at any time. At the argument on appellant's motion for new trial in the court below, this argument was confined to the sufficiency of the evidence to warrant the convictions. They are not a part of the record, and the record shows that the assistant district attorney denied that he called Mr. Sherman a shyster. We find no abuse of discretion by the trial judge in refusing to withdraw a juror in this case. See Com. v. Westwood, 324 Pa. 289, 307, 188 A. 304, 312. The record before us contains nothing that is reviewable on this matter. We have recently had occasion to consider alleged improper remarks of Commonwealth's counsel, and to refer again to the proper practice to be pursued when improper remarks are alleged to have been made by the district attorney to the jury. See Com. v. Lynott, 133 Pa. Superior Ct. 565, 3 A. 2d 207, and Com. v. Trimarchi, 133 Pa. Superior Ct. 307, 2 A. 2d 540. See, also, Com. v. Wilcox, supra, 112 Pa. Superior Ct. 240, 170 A. 455, affirmed 316 Pa. 129, 173 A. 653.

The first, second, and third assignments of error are overruled.

Appellant finally contends that if the evidence was sufficient to sustain the conviction of appellant but one sentence could be imposed as there was but one conspiracy, and therefore only one offense committed. The four bills of indictment were tried together, and appellant was found guilty on each bill, and sentence imposed on each indictment separately and cumulatively.

Conspiracy to maliciously destroy by explosives the property of another would be a complete offense, even if no overt act was committed in pursuance of the conspiracy. The actual destruction of the property of others in pursuance of the conspiracy would be an overt act unlawful per se.[1] Likewise, possessing or carrying bombs, explosives or any noxious liquid gas or substance with intent to use the same unlawfully against the property of another in pursuance of the conspiracy to maliciously destroy the property of others by explosives would also be an overt act unlawful per se.[2]

The evidence is sufficient to establish that appellant and others conspired to maliciously destroy the property of Brent Cleaners, as charged in the indictment, the object of such conspiracy being to force Brent Cleaners to raise the prices charged for their services in the cleaning business. The evidence is likewise sufficient to establish a similar conspiracy by appellant and others to maliciously destroy the property of Peter Pan Cleaners with the same objective. The evidence further shows that there were numerous bombings of the stores of these respective concerns resulting in the destruction of their property. These were overt acts in pursuance of the conspiracies. Consummation of the bombings in pursuance of the conspiracies would necessarily require the possession and carrying of the bombs, gases, substances, or instrumentalities used for such purpose. The object of the two conspiracies was the destruction of the property of the two concerns mentioned for the purpose of forcing them to raise their prices. The actual bombings in pursuance of those conspiracies necessarily involved the possession and carrying of instrumentalities used. In our judgment the evidence fails to establish conspiracies to possess and carry bombs, explosives, noxious liquid gas, or other sub-

---

[1] See Act of March 31, 1860, P. L. 382, §141, as amended by the Act of April 20, 1927, P. L. 326, §1, 18 PS §3181.

[2] See Act of April 25, 1929, P. L. 778, §1, 18 PS §1331.

stances with intent to use the same unlawfully against the property of the two concerns mentioned in the respective indictments, separate and apart from the conspiracies to maliciously destroy by explosives the property of those two concerns, although it is obvious that the possession and carrying of the noxious gas or other substance necessarily took place prior to the actual bombings with such gas or other substance. The illegal possession and carrying of such gas or substance would be an overt act and a step preliminary to the actual bombings following the conspiracies to maliciously destroy the property of the concerns involved.

The rule has been frequently stated that on an indictment and conviction for conspiracy to commit a crime a defendant cannot be sentenced for the overt acts done in pursuance of the conspiracy. See *Com. v. Berman*, 119 Pa. Superior Ct. 315, 181 A. 244. On these indictments for conspiracy to maliciously destroy the property of Brent Cleaners and Peter Pan Cleaners, appellant cannot be sentenced for the overt acts done in pursuance of the conspiracies. The unlawful destruction of the property of these concerns was an overt act in pursuance of the conspiracies, and the possessing and carrying of the noxious gases and substances used in such bombings, although unlawful per se, were acts necessarily involved in the bombings themselves and steps to such accomplishments. We are of the opinion that the evidence is sufficient to sustain the convictions on indictments Nos. 48 and 49, February Sessions, 1937, and the convictions and sentences thereon are sustained. The sentences on indictments Nos. 846 and 847, September Sessions, 1937, are improper and unlawful, as the evidence did not warrant convictions on those indictments.

Judgments of the court below to Nos. 846 and 847, September Sessions, 1937 (appeals Nos. 162 and 163, April Term, 1939), are reversed, and the judgments to Nos. 48 and 49, February Sessions, 1937 (appeals Nos.

160 and 161, April Term, 1939), are affirmed; and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentences (Nos. 48 and 49, February Sessions, 1937), or any part or parts thereof which had not been performed at the time each appeal was made a supersedeas.